Nancy TURNER, ex rel. Farrell W. TURNER, Plaintiff–Appellant,

v.

TENNESSEE VALLEY AUTHORITY, Owner of THE LUCY E, Defendant–Appellee.

No. 87–5845.

United States Court of Appeals, Sixth Circuit.

Argued May 5, 1988.

Decided Oct. 12, 1988.

Rehearing and Rehearing En Banc Dec. 29, 1988.

R. Jan Jennings (argued), Branstetter, Kilgore, Stranch and Jennings, Nashville, Tenn., for plaintiff-appellant.

James E. Fox, Deputy Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn., Thomas C. Doolan, Senior Litigation Atty. (argued), Edward S. Chirstenbury, Gen. Counsel, for defendant-appellee.

Before KRUPANSKY and NELSON, Circuit Judges, and TODD, District Judge.[*]

---

[*] The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation.

KRUPANSKY, Circuit Judge.

Nancy Turner, the plaintiff-appellant in this case (plaintiff or Turner), has appealed the district court's memorandum order dismissing the instant action against the Tennessee Valley Authority, defendant-appellee (defendant or TVA). Plaintiff is the wife and next of kin of Farrell W. Turner, who fell overboard and was drowned on August 25, 1985 while working from the ship, *The Lucy E*, which is owned and operated by the TVA. Turner initiated this action on March 6, 1986 pursuant to the Jones Act, 46 U.S.C.A.App. § 688 (West 1975 and Supp.1988) in the United States District Court for the Middle District of Tennessee for damages resulting from the death of her husband, alleging that at the time and place here in issue *The Lucy E* was unseaworthy and as a result thereof proximately caused her husband's death.

The defendant moved to dismiss the complaint on May 12, 1986, asserting that because of her husband's federal employment, the exclusive remedy for his injury or death was afforded by the Federal Employees' Compensation Act (FECA), 5 U.S.C.A. § 8101 et seq. (West 1980). Turner countered by urging that federal employees, who are employed as seamen by the TVA, had alternative remedies under either the FECA (which specifically applies to federal employees) or the Jones Act (which applies generally to seamen). The district court concluded that the FECA was the exclusive remedy available to the plaintiff and granted the motion to dismiss on December 30, 1986. *Turner v. Tennessee Valley Auth.*, 651 F.Supp. 233 (M.D.Tenn.

1986). Turner timely appealed citing to the language of the Jones Act.[1]

The government has directed this court's attention to the explicit mandate of the FECA, which expressly indicates that it constitutes the exclusive remedy for federal employees injured while in the course of their employment.[2] Turner has argued on appeal that the "exclusive remedy" clause of the FECA excludes seamen employed by the government, including those in the employ of the TVA. In support of this argument, plaintiff has referred to the language incorporated into the enabling legislation of the TVA, which states that the FECA "shall extend to persons given employment under" the TVA "[i]nsofar as applicable." 16 U.S.C.A. § 831b (West 1985). Plaintiff has rationalized that the language "insofar as applicable" should be interpreted as according a government employee, such as Turner, the option of electing between two equally available statutory remedies, i.e., the Jones Act or FECA, in pursuing a recovery for injuries or death proximately caused by the negligence of the government and suffered while acting within the course of his employment.

The Supreme Court has consistently held that the FECA is the exclusive remedy available to individuals employed by federal agencies and instrumentalities, concluding that such employees are barred from commencing an action under the Jones Act or other similar remedial statutes. *See Johansen v. United States*, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952); *Patterson v. United States*, 359 U.S. 495, 79 S.Ct.

1. The Jones Act provides, in pertinent part, that: [I]n case of the death of any seaman as a result of any ... personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.
46 U.S.C.A. App. § 688 (West 1975 and Supp. 1988) (incorporating Federal Employers Liability Act, 45 U.S.C.A. § 51 et seq.).

2. The applicable section of the FECA states: The liability of the United States *or an instrumentality thereof* under this subchapter *or any extension thereof* with respect to the inju-

ry or death of an employee *is exclusive and instead of all other liability* of the United States or the instrumentality to the employee, *his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages* from the United States or the instrumentality because of the injury or death in direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.
5 U.S.C.A. § 8116(c) (West 1980) (emphasis added).

936, 3 L.Ed.2d 971 (1959) (per curiam); *accord Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983) ("FECA's exclusive-liability provision was enacted in substantially its present form ... to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity."); *United States v. Demko*, 385 U.S. 149, 151 n. 4, 87 S.Ct. 382, 384 n. 4, 17 L.Ed.2d 258 (1966). In *Johansen*, the Court clarified a conflict of authority which existed between various circuits which had previously addressed the issue by designating the FECA as the exclusive remedy afforded to sailors while in the employ of the government.

The Federal Employees Compensation Act ... was enacted to provide for injuries to Government employees in the performance of their duties. It covers all employees. Enacted in 1916, it gave the first and exclusive right to Government employees for compensation in any form, from the United States.

. . . .

. . . .

*All in all we are convinced that the Federal Employees Compensation Act is the exclusive remedy for civilian seamen on public vessels.* As the Government has created a comprehensive system to award payments for injuries, it should not be held to have made exceptions to that system without specific legislation to that effect.

*Johansen*, 343 U.S. at 439–41, 72 S.Ct. at 857 (emphasis added).

In *Johansen*, the Supreme Court considered two appeals from different circuit courts of appeals simultaneously. In the second of these cases, *Mandel v. United States*, 191 F.2d 164 (3rd Cir.1951), *aff'd sub nom. Johansen v. United States*, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed.2d 1051 (1952), the Third Circuit had decided that a

seaman who was employed by the federal government was barred from bringing an action under the Jones Act because of the "exclusive remedy" provision of the FECA. The Supreme Court affirmed the result of the Third Circuit in *Mandel*, and at the same time, it expressly disapproved the result in *Johnson v. United States*, 186 F.2d 120 (4th Cir.1950), in which the Fourth Circuit had affirmed a decision permitting a federally employed seaman to commence a suit under the Jones Act for injuries sustained while acting in the course of his employment. *Johansen*, 343 U.S. at 439, 72 S.Ct. at 856.

The Supreme Court subsequently reaffirmed the mandate enunciated in *Johansen* in *Patterson v. United States*, 359 U.S. 495, 496, 79 S.Ct. 936, 937, 3 L.Ed.2d 971 (1959) (per curiam) (specifically declining to reconsider the doctrine announced in *Johansen*). In *Patterson*, one of the petitioners before the Court had claimed damages for wrongful death under the Jones Act; the Court affirmed the circuit court's dismissal of the claim, concluding that seamen employed by government agencies were entitled to recover for injuries incurred during their employment only under the provisions of FECA. *Patterson*, 359 U.S. at 496, 79 S.Ct. at 937 ("The United States 'has established by the Compensation Act a method of redress for employees. There is no reason to have two systems of redress.'") (citation omitted).[3]

The federal courts which have considered this issue have consistently adhered to the Supreme Court's mandate in *Johansen* and *Patterson* designating the FECA as the exclusive remedy available for injuries sustained by federal employees in the course of their employment duties.

The lower federal courts have held, uniformly, that persons for whom the Government has supplied an administrative compensation remedy are precluded

---

**3.** In *Patterson*, the Court also particularly noted that, in its earlier opinion in *Johansen*, 343 U.S. at 439, 72 S.Ct. at 856–57, it had expressly rejected the reasoning and the result indicated by the decision in *United States v. Marine*, [155 F.2d 456 (4th Cir.1946)], in which a civilian employee of the Government was awarded damages ... for injuries sustained by him while aboard a vessel operated by the United States in the merchant service. *Patterson*, 359 U.S. at 496 n. 1, 79 S.Ct. at 937 n. 1.

from seeking recovery against the United States for injuries received in the course of their work under the Federal Tort Claims Act, *the Jones Act,* or the Public Vessels Act.

*United States v. Demko,* 385 U.S. 149, 151 n. 4, 87 S.Ct. 382, 384 n. 4, 17 L.Ed.2d 258 (1966) (emphasis added); *see also Flippo v. Tennessee Valley Auth.,* 486 F.2d 612, 612–13 (5th Cir.1973) (seaman employed by TVA may not bring action under Jones Act and was limited to remedies provided by FECA); *Posey v. Tennessee Valley Auth.,* 93 F.2d 726, 727–28 (5th Cir.1937) (FECA provided exclusive remedy for TVA employees; TVA not subject to provisions of state workers' compensation laws); *accord Mills v. Panama Canal Co.,* 272 F.2d 37, 38–39 (2nd Cir.1959) (FECA provided exclusive remedy for injured seaman employed by the Panama Canal Company), *cert. denied,* 362 U.S. 961, 80 S.Ct. 877, 4 L.Ed.2d 876 (1960); *Petition of United States ex rel. Inland Waterway Corp.,* 212 F.Supp. 214, 215 (E.D.La.1962), *aff'd per curiam sub nom. Jarvis v. United States,* 342 F.2d 799 (5th Cir.), *cert. denied,* 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75 (1965).

Nor does the argument presented by the dissent in its separate opinion, noting that the enabling legislation which created the TVA specifically empowered that agency to "sue or be sued in its corporate name," 16 U.S.C.A. § 831c(b) (West 1985), alter the conclusion that the FECA constitutes the exclusive remedy for work-related injuries sustained by maritime employees of the TVA. The Supreme Court has repeatedly held that "the general authority to 'sue and be sued' is to be delimited [where] ... it [is] clearly shown that certain types of suits are not consistent with the statutory ... scheme." *Loeffler v. Postmaster Gen'l,* —— U.S. ——, ——, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988) (quoting *Federal Hous. Admin. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed.2d 724 (1940)); *Franchise Tax Bd. of Cal. v. United States Postal Serv.,* 467 U.S. 512, 517, 104 S.Ct. 2548, 2553, 81 L.Ed.2d 446 (1984) (same); *accord Reconstruction Finance Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 84, 61 S.Ct. 485, 486, 85 L.Ed.2d 595 (1941)

(issue is whether Congress intended immunity for agency authorized to "sue and be sued"). The express language of the FECA demonstrates the Congressional intent that the remedies provided to federal employees under that statutory scheme were "exclusive and instead of all other liability of the United States or the instrumentality," even in regard to those individuals employed by federal agencies empowered under the terms of their enabling legislation to "sue and be sued." 5 U.S.C.A. § 8116(c) (West 1980).

> The Federal Employees Compensation Act ... was enacted to provide for injuries to Government employees in the performance of their duties. It covers all employees. Enacted in 1916, it gave the first and exclusive right to Government employees for compensation, in any form, from the United States.... Such a comprehensive plan for waiver of sovereign immunity, in the absence of specific exceptions, would naturally be regarded as exclusive..... *Such a position does not run counter to the progressive liberalization of the right to sue the United States or its agencies for wrongs.*[8] This Court accepted the principle of the exclusive character of federal plans for compensation in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 [1950].... Much the same reasoning leads us to our conclusion that the Compensation Act is exclusive.

*Johansen,* 343 U.S. at 439–41, 72 S.Ct. at 857 (emphasis added) (citing in footnote eight to *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed.2d 784 (1939) (presumption that a federal agency empowered to "sue and be sued" has waived sovereign immunity from suit is rebutted where Congress has indicated that another federal remedy is exclusive)); *accord Loeffler* —— U.S. at ——, 108 S.Ct. at 1973 ("[W]hen Congress intends the waiver of sovereign immunity in a new cause of action directed against federal entities to be exclusive,—in effect, to limit the force of 'sue-and-be-sued' clauses —it has said so expressly."). *See generally Lockheed Aircraft Corp. v. United*

*States,* 460 U.S. 190, 193–94, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983) ("In enacting [the FECA], Congress adopted the principal compromise—the *'quid pro quo'* —commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.") (emphasis in original).

By including this express limitation in the text of the FECA, which was incorporated by reference as part of the enabling legislation which created the TVA, 16 U.S.C.A. § 831b (West 1985), Congress excluded all other statutory causes of action against federal agencies empowered to "sue and be sued," including suits under the Jones Act, as "[in]consistent with the statutory ... scheme" provided under the FECA, *Loeffler v. Postmaster Gen'l,* — U.S. —, —, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988) (quoting *Federal Hous. Admin. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed.2d 724 (1940)); *Franchise Tax Bd. of Cal. v. United States Postal Serv.,* 467 U.S. 512, 517–18, 104 S.Ct. 2548, 2553, 81 L.Ed.2d 446 (1984) (same); *accord Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 389, 59 S.Ct. 516, 518, 83 L.Ed.2d 784 (1939) ("The Congressional will must be divined ... by ... the ascertainment of policy immanent ... in a series of statutes utilizing corporations for governmental purposes and drawing significance from dominant contemporaneous opinion regarding the immunity of governmental agencies from suit."). Although the concerns of the dissent are appreciated, tenuous suggestions indulging in speculation as to the future actions of the Supreme Court would undermine the doctrine of stare decisis. *See, e.g., Major v. United States,* 835 F.2d 641, 645 (6th Cir.1987) (per curiam) (Despite criticism regarding the Supreme Court's decision in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 2d 152 (1950) (exclusive compensation for injuries resulting from military service provided pursuant to federal statutes), the court is "bound to observe the [Supreme] Court's clear directive on this issue."), *cert.*

*denied,* — U.S. —, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988); *Irvin v. United States,* 845 F.2d 126, 131 (6th Cir.), *cert. filed,* 57 U.S.L.W. 3123 (U.S. July 25, 1988) (same).

Accordingly, the plaintiff's contention that the FECA does not provide the exclusive remedy for seamen employed by the TVA is without merit, and the decision of the district court is AFFIRMED.

DAVID A. NELSON, Circuit Judge, dissenting.

Were it not for the statutory gloss provided by decisions such as *Posey, Johansen,* and *Flippo,* I doubt that it would occur to many people, on simply reading the pertinent statutes, that Congress did not intend the Tennessee Valley Authority to be subject to suit under the Jones Act for negligently causing the death of a crew member of a TVA vessel.

When Congress passed the Jones Act in 1920, it authorized the bringing of an action for damages in respect of the death of "any" seaman. 46 U.S.C. App. § 688. Because of the doctrine of sovereign immunity, the United States itself was not subject to suit under the Jones Act; but when, in 1933, Congress created TVA as a separate body corporate, Congress gave the new corporation only limited immunity from suit. From the very first day of its existence, TVA has been subject to suit in its corporate name, just as a private corporation would be, except as otherwise "specifically" provided in the TVA Act (see 16 U.S.C. § 831c(b)) and except as otherwise provided in subsequently enacted legislation. Nowhere in the TVA Act has Congress "specifically" provided that TVA should be immune from suit under the Jones Act—and the only subsequent enactment that is pertinent points in precisely the opposite direction.

"[I]nsofar as applicable," the TVA Act of 1933 extended the "benefits" of the Federal Employees Compensation Act of 1916 to persons given employment under the provisions of the 1933 Act. 16 U.S.C. § 831b. Whether a prohibition against suing under the Jones Act was originally perceived as one of the "benefits" thereby bestowed

upon TVA employees appears doubtful for several reasons. Not until 1949, for one thing, did Congress expressly state that the liability of the United States and its instrumentalities under the FECA should be "exclusive"—and when Congress added the exclusivity provision, which is now codified at 5 U.S.C. § 8116(c), it expressly excepted persons in the position of plaintiff's decedent. The exception is no less applicable to TVA than the general exclusivity provision itself.

The language of the post–1949 version of the FECA, as I read it, does not demonstrate a Congressional intent that the remedies provided under the FECA are to be "exclusive and instead of all other liability" insofar as claims involving masters or crewmembers of vessels are concerned. Although the first sentence of 5 U.S.C. § 8116(c) says that the liability of the United States or an instrumentality thereof under the FECA is exclusive, the second sentence, as quoted in footnote 2 of the majority opinion, provides as follows: "However, this subsection does not apply to a master or a member of a crew of a vessel."

Plaintiff's decedent, Farrell W. Turner, was unquestionably "a member of a crew of a vessel." If that vessel had been owned and operated by a private corporation, the corporation would unquestionably have been subject to suit under the Jones Act on account of Mr. Turner's death. Congress having launched TVA into the commercial world with a "sue-and-be-sued" clause in its charter, just as Congress was to make the Postal Service a "sue-and-be-sued" entity a generation later, I should have thought, based on the plain words of the pertinent statutes, that TVA would be no less amenable to suit under a statute such as the Jones Act than the Postal Service or any private corporation would be. See *Franchise Tax Board of California v. U.S.P.S.*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984), where, as noted in *Loeffler v. Frank*, —— U.S. ——, ——, 108 S.Ct. 1965, 1970, 100 L.Ed.2d 549 (1988), "the Court held that the sue-and-be-sued clause must be liberally construed and that the Postal Service's liability must be presumed

to be the same as that of any other business."

In *Posey v. Tennessee Valley Authority*, 93 F.2d 726 (5th Cir.1937), however, the Circuit Court of Appeals for the Fifth Circuit decided that because a TVA employee who was injured on the job could seek redress from the corporation under the FECA, he could not sue the corporation under state law. And in *Flippo v. Tennessee Valley Authority*, 486 F.2d 612 (5th Cir.1973)—a case decided after Congress had made the "benefits" of the FECA "exclusive" for all TVA employees except masters and crewmembers of vessels—the same circuit held that an injured TVA seaman could not sue TVA under maritime law.

In announcing its conclusion in *Flippo*, the Fifth Circuit confessed to "a certain bewilderment" as to how 5 U.S.C. § 8116(c) could be read as cutting off substantial maritime law rights that seemed to be expressly reserved by the plain language of the statutory proviso declaring that the exclusivity subsection of the FECA "does not apply to a master or a member of a crew of a vessel." *Flippo*, 486 F.2d at 612. And the able district judge whose decision is now before us on appeal made a similar confession; in denying plaintiff's motion to reconsider dismissal of the Jones Act claim, Chief Judge Thomas A. Wiseman, Jr., said that the points urged by plaintiff "have logical force and might have carried the day had they been made in the late 1930s, before *Posey* and progeny had become settled law." Judge Wiseman went on to say that "[p]erhaps an appellate court will undertake to reexamine the settled precedents at issue; this Court feels itself bound."

Our court is not bound by decisions of other courts of appeals, of course, and unless reexamination of the *Posey/Flippo* doctrine is precluded by Supreme Court or Sixth Circuit precedent, I would be inclined to undertake it.

There appears to be no Sixth Circuit decision in point. The only Supreme Court cases I know of that might rule out the reexamination suggested by Judge Wise-

man are *Johansen v. United States*, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952), and its progeny, including *Patterson v. United States*, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959), and *United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966)—and none of these cases holds that the "member of a crew of a vessel" exception to the exclusivity provision of the FECA does not mean what it appears to say with respect to employees of sue-and-be-sued government corporations such as TVA.

*Johansen* itself was a suit directly against the United States, not a suit against a separate corporate instrumentality. I may not fully have grasped the reasoning on which the *Johansen* decision rests—reasoning that Mr. Justice Black, speaking for four dissenting members of the Court, characterized as "unique"—but my understanding of *Johansen*'s rationale is this:

—The Federal Employees Compensation Act of 1916 was the first general statute in which the United States put aside the shield of sovereign immunity that had theretofore protected the United States from personal injury claims;

—Subsequent general statutes that also waived the sovereign immunity of the United States (the Public Vessels Act of 1925, *e.g.*) "were not usually directed toward cases where the United States had already put aside its sovereign armor, granting relief in other forms." 343 U.S. at 431 [72 S.Ct. at 853].

—The remedy provided under the FECA was thus the exclusive remedy, usually, even before the 1949 amendments made this explicit. The exception for seamen therefore had no practical effect whatever—at least in the absence of "specific legislation" giving seamen a remedy beyond that made available under the FECA. 343 U.S. at 440–441 [72 S.Ct. at 857–58].

The plaintiffs in *Johansen* and the Supreme Court cases that followed it could point to no "specific legislation" giving them any remedy beyond that provided by the FECA. The plaintiff in the case at bar, however, is in quite a different position. She is not relying upon a general waiver of sovereign immunity for the United States itself or for a federal instrumentality that was already in existence when the FECA was passed in 1916. She relies, rather, upon a 1933 statute that created a brand new government corporation and, *eo instante*, declared that the new corporation should be subject to suit across the board—under the Jones Act, the Federal Employers Liability Act, the common law, or whatever—except as "specifically" provided in the Act itself. If words have meaning, nothing in the TVA Act "specifically" exempted the new corporation from suit under the Jones Act. And nothing in the 1933 version of the FECA specifically said that the FECA remedy was exclusive.

The 1949 amendments to the FECA did have the effect of exempting TVA from suit under statutes such as the Federal Employers Liability Act. That was a perfectly reasonable change for Congress to make, no doubt; for as the Supreme Court was to note in *Johansen* and repeat in *Patterson*, "[t]here is no reason to have two systems of redress." 343 U.S. at 439, 72 S.Ct. at 856; 359 U.S. at 496, 79 S.Ct. at 937. But Congress having chosen to pass a statute that plainly perpetuated two systems of redress for seamen and masters employed by TVA, we have no right to set the statute aside or simply ignore it.

I labor under no illusions as to the likelihood of *Johansen* being overruled. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), a somewhat comparable decision handed down in the same era as *Johansen*, was reconsidered two years ago in *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648, (1987), and a majority of the Court concluded then that the *Feres* doctrine should not be modified. That message seems clear

enough. But the Supreme Court has never decided the issue presented in the case now before us, and I believe that the logic of the Court's very recent decision in *Loeffler* supports the view that TVA (as distinguished from the United States itself) ought to be held subject to suit under the Jones Act. It is hard for me to understand, frankly, how fidelity to the text of the statutes could admit of any other result.